UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ROBERT SZCZYPORSKI | : | Bankruptcy No. 19-14584 |
| Debtor | : | Civil No. 2:20-cv-03133 |

**O P I N I O N**
Appeal of Bankruptcy Court's Order dated June 23, 2020- Affirmed

**Joseph F. Leeson, Jr.**                                                             **March 31, 2021**
**United States District Judge**

**I.      INTRODUCTION**

Robert Szczyporski and Bonnie Szczyporski ("Debtors") appeal from the order entered by the United States Bankruptcy Court for the Eastern District of Pennsylvania on June 23, 2020, overruling their objection to a portion of the Internal Revenue Service's ("IRS") priority claim for a shared responsibility payment ("SRP") under the Affordable Care Act ("ACA"), 42 U.S.C. §§ 18001-18122, which is assessed on behalf of taxpayers who do not maintain health insurance for at least a month in any given tax year.  Upon de novo review, the Bankruptcy Court's decision is affirmed.

**II.     BACKGROUND**

In 2018, Robert Szczyporski earned enough income to require him to file an income tax return, but had not obtained health insurance for that year.  Consequently, the IRS assessed an SRP against him in the amount of $927.

On July 19, 2019, Debtors jointly filed a Chapter 13 bankruptcy case in the United States Bankruptcy Court for the Eastern District of Pennsylvania.  The following month, the IRS filed a proof of claim under 11 U.S.C. §507(a)(8) for taxes in the total amount of $18,027.08, which included the SRP of $927 for the 2018 tax year.  The IRS listed the SRP as an excise tax and the

remaining amounts as income taxes. Debtors filed an objection to this claim, asserting that the SRP claim is in fact a "penalty" and does not qualify for priority treatment under bankruptcy law. A hearing on the claim was not held until after the Chapter 13 plan was confirmed on February 12, 2020. No later than March 4, 2020, when the IRS filed a brief in response to Debtors' objection to the claim, it alleged that the SRP was either an excise or an income tax.

On June 23, 2020, the bankruptcy court issued an Opinion and Order overruling Debtors' objection and holding that the IRS's claim was entitled to priority under 11 U.S.C. § 507(a)(8). The bankruptcy court concluded that the ACA's SRP is a tax under the Bankruptcy Code. The court further determined that the SRP must be either an income tax or excise tax and that it was unnecessary to decide which because both are given priority treatment under the Bankruptcy Code. Debtors timely appealed this decision.

The question in this appeal is whether the ACA's SRP constitutes a penalty or a tax for bankruptcy purposes. If it is a tax, the next question is whether it is entitled to priority treatment. The facts are not in dispute.

## III.  LEGAL STANDARDS

### A.  Review of a Bankruptcy Appeal

On appeal, a district court reviews a Bankruptcy Court's findings of fact applying a "clearly erroneous" standard of review. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). A district court reviews the Bankruptcy Court's legal determinations de novo. *See Sovereign Bank v. Schwab*, 414 F.3d 450, 452 (3d Cir. 2005).

### B.  Determination of Whether an Exaction is a "Tax"

"The term 'tax' is not defined in the bankruptcy code. The definition of tax for bankruptcy priority purposes is found exclusively in federal case law." *In re Sacred Heart*

*Hosp.*, 212 B.R. 467, 471 (E.D. Pa. 1997). The Supreme Court held that "[g]enerally speaking, a tax is a pecuniary burden laid upon individuals or property to support the Government." *New Jersey v. Anderson*, 203 U.S. 483, 487 (1906). *See also New York v. Feiring*, 313 U.S. 283, 285 (1941). "Both the Supreme Court's opinion in *Feiring* and the subsequent decisions by the lower courts predominantly focus on two aspects of the definition of a tax: [1] involuntariness, i.e. that the charge is imposed regardless of the consent of the individual, and [2] the public purpose." *See In re Sacred Heart Hosp.*, 212 B.R. at 472 (internal citations omitted). Additional specific factors have been identified in what is referred to as the Lorber-Suburban analysis: (1) whether the obligation is an involuntary pecuniary burden, regardless of name, laid upon individuals or property; (2) whether the obligation is imposed by, or under authority of, the legislature; (3) whether the obligation is for public purposes, including the purposes of defraying expenses of government or undertakings authorized by it; (4) whether the obligation is imposed under the police or taxing power of the state; (5) whether the obligation is universally applicable to similarly situated entities; and (6) whether granting priority status to the government will disadvantage private creditors with like claims. *See Yoder v. Ohio Bureau of Workers' Comp. (In re Suburban Motor Freight)*, 998 F.2d 338, 341 (6th Cir. 1993); *In re Lorber Indus. of Cal., Inc.*, 675 F.2d 1062, 1063 (9th Cir. 1982) (internal citations omitted).

In *CF&I*, the Supreme Court explained that the court must look beyond labels and conduct a functional analysis to determine if an exaction is a tax or a penalty for bankruptcy purposes. *See United States v. Reorganized Cf&I Fabricators of Utah*, 518 U.S. 213, 224 (1996) ("*CF&I*") (holding that the court must make "a functional examination" of whether claims under 26 U.S.C. § 4971(a), which impose a 10 percent "tax" on any accumulated funding deficiency of certain pension plans, is a tax within the meaning of 11 U.S.C. § 507(a) or a penalty). In

conducting this examination, the court considers whether the exaction looks and works like a tax or a penalty by looking at, *inter alia*, how it is calculated and enforced. *See id.*

The Third Circuit Court of Appeals expanded on this functional examination approach a few years later. In *In re United Healthcare Sys.*, the court stated that "[w]hile the Lorber-Suburban analysis is helpful in executing this examination, we do not believe that its six factors should constrain our inquiry . . . [as] it may prove too rigid to provide an effective analysis of every potential obligation and thus could preclude consideration of important characteristics." *Reconstituted Comm. of Unsecured Creditors of the United Healthcare Sys. v. State of N.J. DOL (In re United Healthcare Sys.)*, 396 F.3d 247, 255 (3d Cir. 2005) (citing *In re Suburban Motor Freight*, 998 F.2d at 341 and *In re Lorber Indus. of Cal., Inc.*, 675 F.2d at 1063). Rather, "a functional examination that balances the characteristics of the obligation at issue will signal whether an obligation is a tax for bankruptcy purposes, and that [] examination should be flexible enough to allow for consideration of any relevant factor." *In re United Healthcare Sys.*, 396 F.3d at 255 (explaining, "our more flexible approach allows us to consider the characteristics of the obligation in light of the evolving treatment of priority claims under the Bankruptcy Code").

IV. **ANALYSIS**

    A. **The SRP is a tax.**

The Supreme Court conducted a "functional approach" of the SRP, which is the exaction at issue here, and concluded that it is a "tax" for constitutional purposes. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 566 (2012) (holding that "the shared responsibility payment may for constitutional purposes be considered a tax, not a penalty"). The Court determined that the "exaction the Affordable Care Act imposes on those without health insurance

looks like a tax in many respects." *See Sebelius*,[1] 567 U.S. at 563. The Court reasoned that the SRP "is paid into the Treasury by 'taxpayer[s]' when they file their tax returns." *See Sebelius*, 567 U.S. at 563 (citing 26 U.S.C. § 5000A(b)). Also, for "taxpayers who do owe the payment, its amount is determined by such familiar factors as taxable income, number of dependents, and joint filing status." *Id.* (citing 26 U.S.C. §§ 5000A(b)(3), (c)(2), (c)(4)). The Court explained that "[t]his process yields the essential feature of any tax: It produces at least some revenue for the Government." *Id.* at 564. The Court further reasoned that the SRP does not have the defining characteristics of a penalty. *See Sebelius*, 567 U.S. at 564-65 (considering the "three practical characteristics . . . that convinced [the Court] the 'tax' was actually a penalty" in *Drexel Furniture* (citing *Drexel Furniture*, 259 U.S. 20, 37 (1922)).

> First, for most Americans the amount due will be far less than the price of insurance, and, by statute, it can never be more, . . . unlike the 'prohibitory' financial punishment in *Drexel Furniture*. Second, the individual mandate contains no scienter requirement. Third, the payment is collected solely by the IRS through the normal means of taxation--except that the Service is not allowed to use those means most suggestive of a punitive sanction, such as criminal prosecution. *See* §5000A(g)(2).

*Id.* at 566 (internal citations omitted).

Debtors contend that *Sebelius* is not applicable here because it did not address the SRP in the context of a bankruptcy case. The Government argues, on the other hand, that *Sebelius* is dispositive of the issue.

This Court agrees with the Government and the bankruptcy court below that *Sebelius* is dispositive. The Supreme Court, even though outside of the bankruptcy context, conducted a functional examination of the SRP and concluded that it is a tax. *See Sebelius*, 567 U.S. at 563-

---

[1] Citations in the record to this case include both *Sebelius* and *NFIB*. For purposes of this Opinion, the Court cites to the case as *Sebelius*.

66. This examination, of which the most notable findings are listed above, is the same examination required in the bankruptcy context pursuant to *CF&I*.[2] Further, the *Sebelius* Court specifically relied on *CF&I* to distinguish between a tax and a penalty. *See id*. at 567 ("In distinguishing penalties from taxes, this Court has explained that 'if the concept of penalty means anything, it means punishment for an unlawful act or omission.'" (quoting *CF&I*, 518 U.S. at 224)). Accordingly, the SRP is a tax under the Bankruptcy Code pursuant to *Sebelius* and the *CF&I* standard.

The SRP is also a tax under the functional approach discussed in *In re United Healthcare Sys*. For the reasons discussed above, the characteristics of the SRP show that it is a tax. Additionally, although this Court is not limited to consideration of the Lorber-Suburban factors, the "factors are helpful in undertaking this functional examination, and at times application of those factors alone sufficiently may answer the question whether a governmental obligation is a tax." *See In re United Healthcare Sys.*, 396 F.3d at 255. First, the SRP is an involuntary pecuniary burden laid upon individuals that do not secure health care. *See* 26 U.S.C. § 5000A(b)(1) ("If a taxpayer who is an applicable individual, or an applicable individual for whom the taxpayer is liable under paragraph (3), fails to meet the requirement of subsection (a) for 1 or more months, then, except as provided in subsection (e), there is hereby imposed on the taxpayer a penalty with respect to such failures in the amount determined under subsection (c)."). Second, the SRP is imposed under the authority of Congress and the ACA. *See id.* Third, the

---

[2] Debtors' suggestion that *CF&I* "was only adjudicating the issues of legality and its application to unique circumstances of the case that have no connection to bankruptcy," *see* Debtors' brief 11-12, is wholly unsupported because the *CF&I* Court was considering the tax versus penalty distinction in the context of a bankruptcy case. *See CF&I*, 518 U.S. 213 (holding that that "the 'tax' under § 4971(a) is not entitled to seventh priority as an 'excise tax' under § 507(a)(7)(E), but instead is, for bankruptcy purposes, a penalty to be dealt with as an ordinary, unsecured claim").

SRP is for public purposes, despite Debtors' argument to the contrary. *See* Debtors' brief 10-11, ECF No. 7. As the *Sebelius* Court explained, everyone will eventually need health care and because state and federal laws require hospitals to provide a certain degree of care regardless of a person's ability to pay, the hospitals pass their costs "to insurers through higher rates, and insurers, in turn, pass on the cost to policy holders in the form of higher premiums;" thereby creating a public interest in all person's securing health care coverage. *See Sebelius*, 567 U.S. at 547; *Williams v. Motley*, 925 F.2d 741, 744 (4th Cir. 1991) (concluding that the uninsured motor vehicle assessment had a public purpose because it "creates a fund that benefits the general public by reducing the overall cost of uninsured motorist insurance coverage"). Fourth, the SRP is imposed pursuant to Congress's taxing power. *See Sebelius*, 567 U.S. at 570 ("Congress had the power to impose the exaction in §5000A under the taxing power."). Fifth, the SRP applies to all individuals required to pay taxes who fail to obtain healthcare. *See* 26 U.S.C. § 5000A(b)(1). Sixth, granting priority status to the government will not disadvantage private creditors "with like claims." *See In re: Jones*, 610 B.R. 663, 667 (Bankr. D. Mont. 2019) (holding that "since the SRP is strictly a function of federal statute, a private creditor cannot be hypothesized who is similarly situated to the IRS"). Consequently, the Lorber-Suburban factors also show that the SRP is a tax.

To the extent Debtors suggest that the Lorber-Suburban analysis is unnecessary in this case and that the Feiring-Anderson test should be applied, *see* Debtors' brief 14 (citing *In re Daley*, 315 F. Supp. 3d 679 (D. Mass. 2018)), the argument is unavailing. The Third Circuit Court of Appeals explained that "[s]ince *Anderson* and *Feiring*, courts have attempted to formulate and apply a definition of 'tax' that recognizes the precedent of *Anderson* and *Feiring* but also accommodates the evolution of the law governing priority of government obligations."

*See In re United Healthcare Sys.*, 396 F.3d at 252. The Third Circuit, citing *CF&I*, opined that although Congress did not reject the Anderson-Feiring reasoning, the proper analysis is to undertake a "functional examination" of the obligation at issue to determine whether it is a penalty or a tax. *See id.* at 255. This examination has been applied here. Moreover, for the reasons previously discussed, application of the Feiring-Anderson analysis, which is largely incorporated into the other tests, would not change the outcome.

Debtors' argument that under the more flexible approach adopted in the Third Circuit, the underlying motive is indicative that the SRP is a penalty, *see* Debtors' brief 10-11, is equally unavailing. In *Sebelius*, the Court explained that although "the payment will raise considerable revenue, it is plainly designed to expand health insurance coverage. [Nevertheless,] taxes that seek to influence conduct are nothing new." *See Sebelius*, 567 U.S. at 567. For example, "federal and state taxes can compose more than half the retail price of cigarettes, not just to raise more money, but to encourage people to quit smoking. . . . Indeed, [e]very tax is in some measure regulatory. . . . That §5000A seeks to shape decisions about whether to buy health insurance does not mean that it cannot be a valid exercise of the taxing power." *Id.* (internal quotations omitted). Accordingly, under the standard in *In re United Healthcare Sys.*, the underlying motive of the SRP does not show that it is a penalty.

This Court also rejects Debtors' suggestion that the "Third Circuit was not concerned that a penalty in bankruptcy should be based on the underlying illegal conduct." *See* Debtors' brief 13. In *CF&I*, the Supreme Court held: "if the concept of penalty means anything, it means punishment for an unlawful act or omission, and a punishment for an unlawful omission is what this exaction is." *CF&I*, 518 U.S. at 224. The Third Circuit thereafter stated in *In re United Healthcare Sys.* that: "We, of course, will follow the lead of the Supreme Court [in *CF&I*]." *In*

*re United Healthcare Sys.*, 396 F.3d at 255. As Debtors recognize, the *Sebelius* Court also discussed the legal-illegal distinction. *See Sebelius*, 567 U.S. at 567 ("In distinguishing penalties from taxes, this Court has explained that 'if the concept of penalty means anything, it means punishment for an unlawful act or omission.'" (quoting *CF&I*, 518 U.S. at 224)). Debtors' attempt to rewrite the Third Circuit's opinion, to distinguish the two Supreme Court cases, and to urge this Court to, instead, accept the reasoning of a district court and of a bankruptcy court, both outside the Third Circuit, is unavailing. *See* Debtors' brief 11-13 (citing *In re Daley*, 315 F. Supp. 3d at 683; *In re Bradford*, 534 B.R. 839, 848–49 (Bankr. M.D. Ga. 2015)). Moreover, failure to purchase health insurance and to instead pay the SRP is not an unlawful act. *See Sebelius*, 567 U.S. at 562-63 ("Under the mandate, if an individual does not maintain health insurance, the only consequence is that he must make an additional payment to the IRS when he pays his taxes. . . . Rather, it makes going without insurance just another thing the Government taxes, like buying gasoline or earning income."); *In re Cousins*, 601 B.R. 609, 617 (Bankr. E.D. La. 2019).

Debtors' argument that the presence of hardship and abatement indicates penalty is also unpersuasive. *See* Debtors' brief 15-16. Initially, the Court notes that Debtors rely on a Tenth Circuit opinion issued years before any of the relevant law discussed herein. *See id.* (citing *In re Cassidy*, 983 F.2d 161, 164 (10th Cir. 1992)). Furthermore, the dissenting opinion in *Sebelius* advanced the argument Debtors now make, which was insufficient to sway the majority in *Sebelius*. *See Sebelius*, 567 U.S. at 665 (dissenting opinion) ("That §5000A imposes not a simple tax but a mandate to which a penalty is attached is demonstrated by the fact that some are exempt from the tax who are not exempt from the mandate--a distinction that would make no sense if the mandate were not a mandate.").

For all these reasons, and under any of the tests outlined by the Supreme Court and in the Third Circuit, the SRP is a tax, not a penalty, in the bankruptcy context.

**B.    The SRP claim is entitled to priority treatment as an income tax.**

The bankruptcy court explained that the "Constitution only authorizes four types of taxes: duties, excise taxes, income taxes and direct taxes. *See* Order 4 (citing *In re Cousins*, 601 B.R. at 619). The court concluded that because "the SRP is not a duty imposed on the importation of goods or a direct tax, *Sebelius*, 567 U.S. at 570-571, it must be either an income or excise tax." *See* Order 4. The bankruptcy court reasoned that because either is entitled to priority, it was not necessary to decide whether the SRP is an excise tax or an income tax. *See id.* (citing *In re Cousins*, 601 B.R. at 620 (concluding that the SRP must be either an excise tax or an income tax)).

**1.    The SRP may be an excise tax, but it is not entitled to priority.**

"[T]he Bankruptcy Code itself provides no definition of 'excise,' 'tax,' or 'excise tax.'" *CF&I*, 518 U.S. at 220. The Third Circuit Court of Appeals, citing Blacks and Oxford English dictionaries, has defined an "excise tax" as "[a] tax imposed on the manufacture, sale, or use of goods, or even more broadly, [a]ny toll or tax." *In re Calabrese*, 689 F.3d 312, 315 (3d Cir. 2012). A court in this district stated, "[a]n excise tax has been defined as an indirect tax, one not directly imposed upon persons or property (citation omitted), and is one that is imposed on the performance of an act, the engaging in any occupation, or the enjoyment or [sic] a privilege." *In re Metro Transp. Co.*, 117 B.R. 143, 153 (Bankr. E.D. Pa. 1990) (internal quotations omitted). Cases in other circuits apply a broad definition. For example, in *In re Rizzo*, the court considered the definitions applied in different courts and found that "an excise has a broad definition essentially encompassing any tax that is indirectly assessed, that is, any tax that is not directly

imposed upon people or property but is instead imposed upon a particular use of property or upon the exercise of a right or privilege." *Rizzo v. Mich. Dep't of Treasury (In re Rizzo)*, 741 F.3d 703, 706 (6th Cir. 2014) (internal quotations omitted). Applying this broad definition, this Court finds that the SRP may be an excise tax. *See In re Cousins*, 601 B.R. at 620 ("Since the SRP is assessed when a taxpayer exercises his or her right to remain uninsured, it may be a tax imposed 'upon the exercise of a right or privilege,' making it an excise tax."). This does not end the inquiry.

> Section 507 further requires that the excise tax be on:
>
> (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
> (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition.

11 U.S.C. § 507(a)(8)(E). In defining "transaction," courts in this district again look to Black's Law Dictionary. *See Templar v. Shamokin Area Sch. Dist. (In re Templar)*, 170 B.R. 562, 564 (Bankr. M.D. Pa. 1994). Applying this definition, a "transaction '. . . must therefore consist of an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered.'" *Id.* (quoting Black's Law Dictionary, Sixth Edition at page 1496). Despite the Government's argument, this Court cannot conclude that the failure to purchase health insurance is a "transaction." *See In re: Jones*, 610 B.R. at 669-70 (holding that the SRP is an excise tax, but it is "neither premised on, nor tied to a transaction"). If this Court were to conclude that the failure to do something is a "transaction," it would eviscerate this additional requirement in § 507(a)(8)(E), which is not in other sections. Accordingly, the SRP claim is not entitled to priority as an excise tax.

**2.    The SRP is an income tax entitled to priority.**

Initially, Debtors assert the Government is barred from claiming that the SRP is an income tax by the doctrine of res judicata. *See* Debtors' brief 20-21 (citing *Zardinovsky v. Arctic Glacier Income Fund (In re Arctic Glacier Int'l, Inc.)*, 901 F.3d 162, 166 (3d Cir. 2018) (holding that confirmed plans are res judicata)). They assert that the IRS's claim lists the SRP as an "excise" tax and that it did not suggest the SRP was an income tax until after the Chapter 13 plan was confirmed. The bankruptcy court rejected Debtors' res judicata argument, concluding that "there is no preclusive effect resulting from the confirmed plan" because the plan listed the IRS claim but reserved the right to pursue the existing objection to priority and, also, that it was the June 23, 2020 ruling on the claim that is entitled to res judicata effect. *See* June 23, 2020 Order 4 n.2, ECF No. 5-2. This Court also rejects the res judicata assertion. Although the confirmation order is the equivalent of a final judgment, the priority of the SRP had not yet been decided. "Congress apparently envisioned that early confirmation would allow early distribution to claimants who were beneficiaries under the plan . . . [and i]n some courts, confirmation often occurs before the deadline for filing claims." *DeHart v. LVNV Funding, LLC (In re Roche)*, No. 5-16-bk-00271-JJT, 2017 Bankr. LEXIS 526, at *3- (Bankr. M.D. Pa. Feb. 24, 2017). Applying res judicata would erode this process. The "confirmation procedure and the claims process are two separate mechanisms provided by the code." *See id.* (sustaining the objection to the claim where the claimant "did not contest the allegation that the statute of limitation barred collection of the claim"). Moreover, the bankruptcy court had not decided whether the tax claims were entitled to priority status. Res judicata does not preclude this Court from considering whether the SRP is an income tax.

"The term 'income tax' means any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts." 4 U.S.C. § 110(c). Income tax has also been defined as a "tax upon earning, taking that term in its broadest sense, and irrespective of the question whether the person whose income is taxed has actively earned it or has merely profited by loaning his capital for active employment by another." *In re Cousins*, 601 B.R. at 620 n.75 (quoting Black's Law Dictionary (10th ed. 2014) (quoting Henry Campbell Black, A Treatise on the Law of Income Taxation under Federal and State Laws § 1, at 1 (1913))). The Supreme Court in *Sebelius* explained that the imposition of the SRP is first dependent on a taxpayer's income. *See Sebelius*, 567 U.S. at 563. Then, when owed, the amount of the SRP "is determined by such familiar factors as taxable income, number of dependents, and joint filing status." *See id.* Accordingly, the SRP may be an income tax. *See In re Cousins*, 601 B.R. at 618-21 (holding that "the SRP might be an income tax . . . since the SRP is based on an individual's income level"). As an income tax, the claim is entitled to priority. *See* 11 U.S.C. § 507(a)(8)(A) (providing that claims for "a tax on or measured by income or gross receipts for a taxable year . . ." are entitled to priority").

V.   **CONCLUSION**

After de novo review, this Court finds that the SRP is a tax, not a penalty, that is entitled to priority treatment in bankruptcy. The decision of the United States Bankruptcy Court for the Eastern District of Pennsylvania issued on June 23, 2020, is affirmed.

An appropriate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge